# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN WHEELER, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 C 11152 |
| | ) | |
| v. | ) | Judge Virginia M. Kendall |
| | ) | |
| MIDLAND FUNDING, LLC, | ) | |
| MIDLAND CREDIT MANAGEMENT, | ) | |
| INC., AND ECORE CAPITAL GROUP | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER AND OPINION

Plaintiff Kevin Wheeler brought this putative class action against Midland Funding, LLC., Midland Credit Management, Inc. ("MCM"), and Encore Capital Group, Inc. alleging that Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et. seq. ("FDCPA"), when MCM's website failed to inform him that his debt was not collectible under the applicable statute of limitations. Defendants now move to dismiss Wheeler's claim for lack of subject matter jurisdiction, arguing that Wheeler lacks Article III standing because he has failed to articulate a concrete injury. For the reasons set forth below, Defendants' Motion to Dismiss is denied.

## BACKGROUND

Sometime in 2015, Wheeler noticed that Midland Credit Management ("MCM") was pulling his credit report. (Dkt. 1 ¶ 33.) MCM is a collection agency that collects charged off-debts for owners of debt, specifically for Midland Funding LLC. (*Id.* 17.) As such, MCM is a debt collector as defined in the FDCPA. *See Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1720 (2017). Wheeler contacted MCM and was told that it was attempting to collect

an alleged credit card balance and offered Wheeler a 40% discount to settle the debt. (*Id.* ¶¶ 33-35, 38.)

Thereafter, on October 4, 2015, Wheeler noticed that MCM had pulled his credit again. (*Id.* at ¶ 40.) When Wheeler called MCM, a representative provided him with an account number to obtain information about his debt from MCM's website. (*Id.*) MCM's website indicated: (1) that Wheeler last made payment on the debt on September 18, 2009; (2) that the original creditor had given up on being repaid as of April 30, 2010; (3) a settlement offer whereby plaintiff would save 40%; and (4) notice that MCM was not obligated to renew its settlement offer. (*Id.* at ¶¶ 44-45; Dkt.1, Ex. B.) The website did not indicate that the statute of limitations on Wheeler's debt had expired.

Because the statute of limitations for his credit card debt had expired, Wheeler asserts that his debt could not be forcibly collected and that Defendants violated the FDCPA and related rules because they failed to inform him of that fact. (*Id.* ¶ 46.) He also alleges that Defendants regularly attempt to collect debts from other debtors where the statute of limitations on the debt has expired. (*Id.* at ¶ 48.)

In addition to the facts alleged by Wheeler in his Complaint, both sides submit facts elicited during discovery. Specifically, prior to accessing MCM's website in September 2015, Wheeler's credit card debt was bought by non-party Asset Acceptance, LLC, a subsidiary of Defendant Encore. (Dkt. 44-1 at 99:10-20; Dkt. 44 at 3.) In early April 2015, approximately six months before he accessed MCM's website, Asset sent Wheeler a letter notifying him that the statute of limitations applicable to his credit card debt had expired. (Dkt. 44-1 at 133:1-135:15.) At his deposition, Wheeler conceded that he received the notice from Asset regarding the statute of limitations, understood what it meant, and admitted that he did not intend to make any further

payments on the debt. (*Id.*) In a response to a Request for Admission, Plaintiff admitted that he has not "sustained any actual damages relating to this lawsuit," (Dkt. 44-2 at 5), and testified that he did not believe he had "any actual damages" or "other kind of injuries . . . as a result of Midland failing to put on its website the Statute of Limitations disclosure." (Dkt. 44-1 at 152:20-153:5.) Wheeler, however, also testified that he felt misled by Midland's offer to settle the debt without informing him that the statute of limitations had run, because he did not "know the consequences of making a payment." (Dkt. 49-1 at 127:22-128:15.) Wheeler also testified that in light of the statute of limitations information he received from Asset, the lack of notice about the statute of limitations from MCM confused him because he believed the account had been closed. (Dkt. 44-1 at 131:6-24.) At the time he accessed the website, Wheeler did not know how MCM calculated the applicable statute of limitations, including whether they applied a different statute of limitations to the debt. (*Id.* at 174:14 -176:1.) He also did not know whether MCM had any reason to consider his account to be restarted by the statute of limitations. (*Id.* at 177:4-20.)

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When a defendant brings a facial challenge to subject matter jurisdiction, "the district court must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor, unless standing is challenged as a factual matter." *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 691 (7th Cir. 2015). If, however, as here, a defendant factually challenges the basis for federal jurisdiction, "the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in

fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (citation and internal quotation marks and annotation omitted).

## DISCUSSION

Defendants argue that Wheeler lacks Article III standing because he did not suffer any concrete harm or even the risk of harm resulting from Midland's alleged violations of the FDCPA. (*Id.* at 9.) Defendants focus on Plaintiff's admissions during discovery that he was aware that the statute of limitations had expired on his debt before he accessed MCM's website, he had no intention of making any payment to MCM, and that he testified he did not suffer an injury from the alleged FDCPA violation. (Dkt. 44 at 1-2.) Wheeler responds even though he did not suffer a pecuniary injury, he suffered an informational injury—the deprivation of critical account information regarding his debt—which the Seventh Circuit recognizes as a "concrete injury" for the purposes of Article III standing. (Dkt. 49 at 2.)

### I. Article III Standing

There is "[n]o principle . . . more fundamental to the judiciary's role in our system of government than the constitutional limitation of federal court jurisdiction to actual cases or controversies." *Meyers v. Nicolet Restaurant of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016), *cert. denied*, No. 16-1113, 2017 WL 1001378 (U.S. June 19, 2017) (quoting *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1547 (2016)). Whether a claimant has standing to sue is an important component of the case and controversy limitation because it ensures "that courts do not decide abstract principles of law. . . ." *Meyers*, 843 F.3d at 726 (quoting *Sierra Club v. Marita*, 46 F.3d 606, 613 (7th Cir. 1995.) "The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp

the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1146 (2013).

Article III standing consists of three elements, requiring the plaintiff to "have: (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1548 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. at 560-61 (1992)). The plaintiff bears the burden of establishing these elements. *Diedrich v. Ocwen Loan Servicing, LLC.*, 839 F.3d 583, 588 (2016) (citing *Lujan* at 561).

The current dispute centers on the injury in fact requirement, specifically whether Wheeler's alleged injury was sufficiently concrete to confer standing. An injury in fact is established when a plaintiff shows that he suffered "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotations omitted). To be concrete, an injury must be *de facto*, meaning that it must actually exist. *Spokeo*, 136 S.Ct. at 1549. That being said, to be concrete, an injury does not necessarily have to be tangible. *Id.*

When determining whether intangible injuries can confer standing, courts look to both history and congressional judgment. *Spokeo*, 136 S.Ct. at 1549. Because standing is "grounded in historical practice" it "is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* "In addition, because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important." *Id.* As a result, Congress may elevate "to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Lujan*, 504 U.S. at 578. In

fact, "the risk of real harm" can satisfy the concreteness requirement and "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Spokeo*, 136 S.Ct. at 1549. "In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." *Id.* That being said, bare statutory violations that cannot result in the risk of real harm, like the dissemination of a wrong zip code, may not confer Article III standing. *Id.; see also Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 911 (7th Cir. 2017) (holding that former cable subscriber did not suffer concrete injury after cable company failed to destroy his personal information as required by the Cable Communications Policy Act, where there was no risk to him of harm); *Meyers*, 843 F.3d at 727 (finding that restaurant's failure to truncate expiration date of customer's credit card on receipt in violation of the Fair and Accurate Credit Transactions Act did not confer Article III standing).

When looking to historical practice and Congressional intent, Wheeler has sufficiently established a concrete injury. Due to lackluster and inconsistent consumer protections against unscrupulous debt collectors and to ensure that all consumers would be treated reasonably and civilly, Congress enacted the FDCPA "to protect consumers from abusive, deceptive, and unfair debt collection practices." *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1324 (7th Cir. 1997); *see also Henson*, 137 S. Ct. at 1720 (noting the FDCPA "authorizes private lawsuits and weighty fines designed to deter wayward collection practices"). In particular, § 1692e(2)(A) provides that debt collectors may not falsely represent "the character, amount, or legal status of any debt." *See also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010). The FDCPA also prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. These sections were "designed to provide information that helps consumers to choose intelligently."

*Janetos v. Fulton Friedman & Gullace*, LLP, 825 F.3d 317, 324 (7th Cir. 2016) (*quoting Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009)). Wheeler's allegations – that MCM failed to inform him that the statute of limitations had run on his debt while trying to collect his debt and that he was confused about the status of his debt due to their failure to inform him of his debt' – fit squarely within the ambit of activity that Congress intended to curtail when promulgating sections 1692e and 1692f.

The Supreme Court has also recognized that receiving misleading or incomplete information in violation of a statutory mandate, satisfies Article III's concreteness requirement. In *Havens Realty Corp. v. Coleman*, the Court found that individual plaintiffs who acted as "testers," individuals who pose as renters for the purpose of collecting evidence of unlawful housing discrimination, had standing to sue under the Fair Housing Act. 455 U.S. 363, 373 (1982). The Court reasoned that the FHA conferred an "enforceable right to truthful information concerning the availability of housing" and that "[a] tester who has been the object of a misrepresentation made unlawful under [the FHA] has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions. That the tester may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, does not negate the simple fact of injury within the meaning of" the statute. *Id.* at 374. Similar to the FHA, the FDCPA, confers a right to truthful information and is aimed at preventing unlawful misrepresentations. And similar to the testers in *Havens Realty*, Wheeler personally suffered a cognizable injury – the deprivation of truthful information – even without suffering a pecuniary loss.[1]

---

[1] The Supreme Court has also recognized that the right to information can confer standing in other circumstances. *See Federal Elec. Com'n v. Akins*, 524 U.S. 11 (1998) (finding that a group of voters' inability to obtain information

Several district courts within this Circuit have recently recognized that similar informational injuries in the specific context of the FDCPA, also confer standing. In a strikingly similar case, *Haddad v. Midland Funding*, a consumer sued MCM–the same defendant here–for purported violations of the FDCPA after MCM sent the plaintiff a collection letter stating that "flexible options may no longer be available to [the plaintiff]" even though "it never intended to make [these] options unavailable to [the plaintiff]." *Haddad*, 2017 WL 1550187, at *1. Relying on *Havens Realty*, the court ultimately concluded that a violation of the plaintiff's right to receive truthful information is sufficient to cause a concrete injury in part because "[t]ruthful information about the state of [his] financial affairs had intrinsic value to him." *Id.* at 4. *See, e.g., Pierre v. Midland Credit Mmgt. Inc.*, No 16 C 2895, 2017 WL 1427070, at *3 (N.D. Ill. Apr. 21, 2017) (concluding that plaintiff had suffered injury in fact after Midland sent her "a misleading dunning letter that sought payment on a time-barred debt and lacked disclosures to which she was legally entitled" because "[s]uch an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury'") (quoting *Saenz v. Buckeye Check Cashing of Illinois*, No. 16 C 6052, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016)); *Quinn v. Specialized Loan Servicing, LLC.*, 2016 WL 4264967 (N.D. Ill. 2016) (failure to provide the plaintiffs with information required under the FDCPA constituted a sufficiently concrete harm for purposes of Article III standing); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill.

---

required by the FECA to be made public was a sufficient injury in fact to satisfy Article III standing); *Public Citizen v. U.S. Dept. of Justice*, 491 U.S. 440 (1989) (holding that plaintiff had standing to challenge the Justice Department's failure to provide access to information, the disclosure of which was required by the Federal Advisory Committee Act). Similarly, the Seventh Circuit has recently emphasized that "[a] plaintiff suffers an injury-in-fact when she is unable to obtain information that is statutorily subject to public disclosure." *Carlson v. United States*, 837 F.3d 753, 758 (7th Cir. 2016).

2016) (holding that receiving a debt collection letter that wrongly assesses percentage-based collection costs is a concrete injury). The logic of these cases is persuasive here and consistent with established Seventh Circuit case law regarding the FDCPA, which "does not require proof of actual damages as a precursor to the recovery of statutory damages" and when looking at standing focuses on "the debt collector's misconduct, not whether the debt is valid or, as here, whether the consumer has paid an invalid debt." *Keele v. Wexler*, 149 F.3d 589, 593 (7th Cir. 1998).

Defendants reliance on two recent Seventh Circuit decisions in which certain intangible injuries were found to be insufficient to confer standing—*Meyers v. Nicolet Restaurant of De Pere, LLC.* and *Gubala v. Time Warner Cable, Inc*—is misplaced. In *Meyers*, the plaintiff brought a putative class action against Defendant Nicolet Restaurant, seeking damages after the restaurant failed to truncate the expiration date of his credit card on his receipt—a purported violation of the Fair and Accurate Credit Transactions Act (FACTA). *Meyers*, 843 F.3d at 725. Relying on *Spokeo*, the Seventh Circuit held that "Meyers' allegations [were] insufficient to satisfy the injury-in-fact requirement for Article III standing" because Meyers had not suffered any harm due or the expiration of harm to the expiration date not being printed on his receipt. *Id.* at 727. *Meyers* is distinguishable from the facts here. Importantly, the plaintiff's alleged injury in *Meyers*—that his restaurant receipt did not comply with the FACTA because it did not truncate the expiration date on his credit card—did not align with the protections of the statute, which were aimed at curbing identity theft. In fact, in regards to the statute at issue in *Meyers*, Congress has expressly declared that the failure to truncate a credit card's expiration date, without more, does not heighten the risk of identity theft. *Id.* As such, the Seventh Circuit, echoing *Spokeo*, noted that a "violation of a statute, completely divorced from any potential real-

9

world harm, is [not] sufficient to satisfy Article III's injury-in-fact requirement." *Id.* at 729. Here, the alleged injury—dissemination of misleading information about the status of a consumer debt—is exactly the type of injury that Congress intended to prevent when it promulgated the FDCPA.

*Gubala*, the other recent Seventh Circuit decision relied upon by Defendants is also distinguishable. In *Gubala*, the plaintiff brought a putative class action against Time Warner, his former cable provider, after Time Warner failed to destroy his personal information, a purported violation of the Cable Communications Policy Act. *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909 (7th Cir. 2017). While recognizing that "there [was] unquestionably a risk of harm in such a case," the Seventh Circuit affirmed the district court's decision that Gubala lacked standing because he had failed to present any allegations or evidence showing that he was harmed and had "not alleged any plausible (even if attenuated) risk of harm to himself from [Time Warner's] violation—any risk substantial enough to be deemed concrete." *Id.* The Court went on to note that Time Warner's conduct in retaining Gubala's personal information was a self-regarding act, in that it had the potential to harm Time Warner by cluttering its files and opening it up to lawsuits under the Cable Communications Policy Act, but that the violation did not harm the plaintiff. *Id.* at 912. Furthermore, the statutory requirement to destroy a former customer's personal information was qualified by related provisions that permitted and even required the cable operator to retain personal information for certain reasons. *Id.* at 913.

Like the violation in *Meyers*, and unlike Wheeler's injury, the alleged statutory violation in *Gubala*, did not affect the plaintiff in any tangible way. Unlike that scenario, Wheeler was directly impacted by the Defendants' actions; he personally received misleading information regarding the status of his debt which essentially encouraged him to make a payment on a now-

expired debt.  Just because Wheeler did not suffer a pecuniary injury, does not mean he did not suffer an injury in fact.  In addition to receiving the misleading information, Wheeler testified that he was confused by the Defendants' lack of disclosure regarding his debt as he was previously under the impression that the statute of limitations had run and that the debt was not legally enforceable.  Confused by the status of his debt, MCM's lack of disclosure opened the possibility that MCM calculated the applicable statute of limitations differently than Asset and would try to enforce the debt.  This is exactly the type of injury the FDCPA was enacted to prevent and the type of injury that courts within this circuit have consistently recognized as conferring standing.

## **CONCLUSION**

For the reasons set forth above, the Defendant's Motion to Dismiss is denied.


Hon. Virginia M. Kendall
United States District Judge

Date:  July 31, 2017