IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN WHEELER, on behalf of himself and a putative class of others similarly situated,<br><br>                *Plaintiff*,<br>v.<br><br>MIDLAND FUNDING LLC, MIDLAND CREDIT MANAGEMENT, INC., and ENCORE CAPITAL GROUP, INC.,<br><br>                *Defendants*. | No. 15 C 11152<br><br>Hon. Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kevin Wheeler ("Wheeler") seeks to certify a class under the Fair Debt Collection Practices ACT ("FDCPA"). (Dkt. No. 62.) The Defendants, Midland Funding LLC, Midland Credit Management, Inc. ("MCM"), and Encore Capital Group, Inc., oppose certification as improper arguing Wheeler lacks standing to assert his FDCPA claims and has failed to meet the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). (Dkt. No. 71.) Because Wheeler has standing to sue and satisfies the requirements of Rule 23, the Court grants his Renewed Motion for Class Certification with a modified class definition. [62.]

## BACKGROUND

Sometime in 2015, Wheeler noticed that MCM was pulling his credit report. (Dkt. No. 1, at ¶ 33.) Wheeler called and MCM stated it was attempting to collect an alleged credit card balance and offered Wheeler a 40% discount to settle that debt. (*Id.* ¶¶ 33-35, 38.) Subsequently, on October 4, 2015, Wheeler noticed that MCM had pulled his credit report again. (*Id.* ¶ 40.) So Wheeler again contacted MCM and a representative directed him with an account number to obtain information about his debt from MCM's website. (*Id.*) MCM's website indicated: (1) that Wheeler's last payment on the debt was on September 18, 2009; (2) that the

1

original creditor had given up on being repaid as of April 30, 2010; (3) a settlement offer whereby plaintiff would save 40%; and (4) notice that MCM was not obligated to renew its settlement offer. (*Id*. ¶¶ 44-45; Ex. B). The website did not indicate that the statute of limitations on Wheeler's debt had expired. (*Id*. ¶ 48.)

Because Illinois' statute of limitations on his credit card debt had expired, Wheeler asserts that his debt could not be forcibly collected and that Defendants violated the FDCPA and related rules because they failed to inform him of that fact. (*Id*. ¶¶ 46, 58-61.) He also alleged that the Defendants regularly attempt to collect debts from other debtors where the statute of limitations on the debt has expired. (*Id*. ¶48.) As a result, Wheeler's now seeks to certify and represent a class of individuals who received similar treatment allegedly in violation of the FDCPA.

## **LEGAL STANDARD**

A party seeking to maintain a class action must affirmatively demonstrate compliance with Rule 23 through evidentiary proof. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *Szabo v. Bridgeport Machs.*, 249 F.3d 672, 675 (7th Cir. 2001). Specifically, a plaintiff must satisfy all requirements of Fed. R. Civ. P. 23(a) and fall within at least one of the categories identified in Rule 23(b). *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). This requires the court's rigorous analysis of compliance with the Rule 23 elements in order to ensure that a plaintiff's case is not a "weak candidate for class treatment." *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 746-47 (7th Cir. 2008); *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 350 (2011). Recognizing the broad discretion to determine whether class certification is appropriate, a district court's ruling will only be overturned for abuse of discretion. *Arreola*, 546 F.3d at 794; *Harriston v. Chi. Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993).

**DISCUSSION**

Wheeler seeks to certify the following class:

(a) all individuals with Illinois addresses (b) who accessed the MCM web site (c) and were offered a settlement or discount (d) on a credit card debt on which the last payment had been made more than five-years prior to the accessing (e) where the date of access was on or after a date one year prior to the filing of this action and on or before a date 21 days after the filing of this action.

(Dkt. No. 62, at 1.)

The Defendants lodge the following objections to class certification: (1) Wheeler lacks standing because he suffered no actual harm, (Dkt. No. 71, at 7-9); (2) Wheeler fails to establish the commonality and predominance elements of Rule 23, (*Id*. at 9-14); (3) Wheeler's claims do not meet the typicality and adequacy elements under Rule 23, (*Id*. at 14-15); and (4) the class claims are not superior to any potential individual claims, (*Id*. at 15).

**I. Standing**

The Defendants return to the issue of standing, an issue resolved by the Court in its denial of the Motion to Dismiss, arguing that the Plaintiff cannot show injury in fact because he suffered no actual harm as a result of the alleged FDCPA violation. See (Dkt. Nos. 60; 71, at 7-9). Because it is a threshold inquiry, standing may be examined at "successive stages of litigation." *Diedrich v. Ocwen Loan Serv'ing*, 839 F.3d 583, 588 (7th Cir. 2016). A plaintiff seeking to certify a class under Rule 23 must show that he has standing and that his proposed class is ascertainable. *Spokeo v. Robins*, 136 S. Ct. 1540, 1547 n.6 (2016); *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 493 (7th Cir. 2012). It is an "antecedent legal issue" a court must resolve before proceeding to evaluate the Rule 23 factors. *Payton v. County of Kane*, 308 F.3d 673, 676 (7th Cir. 2002).

As a starting point, the Court's opinion denying the Motion to Dismiss for lack of standing remains correct and the reasoning sound for the reasons therein. In its renewed attack

on standing the Defendants cite to *Groshek v. Time Warner Cable* and a case from the Sixth Circuit for the propositions that Congress does not define the boundaries of Article III standing, and further that standing does not exist where a Plaintiff fails to show "any appreciable risk of harm" beyond a "bare procedural violation" of the statute. 865 F.3d 884, 887 (7th Cir. 2017); *see also Lyshe v. Levy*, 854 F.3d 855, 857-62 (6th Cir. 2017). However these cases differ from the current matter in meaningful ways.

First, in *Groshek* the alleged violation was the defendant's failure to disclose its intent to pull the plaintiff's credit report for a job application in violation of the Fair Credit Reporting Act ("FCRA"). 865 F.3d at 886. Groshek sued as a class representative but the Seventh Circuit held that he lacked standing because of his failure to identify any actual harm arising out of the statutory violation. *Id*. at 887-88. In reaching this result, the Court looked to the Congressional intent of the FCRA and found that Groshek's alleged harm did not match up with the underlying purpose of imposing credit reporting protections in the FCRA. *Id*. To the contrary, the violation that Wheeler asserts here is precisely related to the underlying purpose of the FDCPA— protecting consumers from deceptive or misleading statements in connection with the collection of a debt—and he further identifies actual harm in that he was misled and confused by the Defendants' website. Although there were no monetary damages, Wheeler still suffered an intangible injury that corresponds to the history and congressional intent underscoring the FDCPA protections. *See Spokeo*, 136 S. Ct. at 1549.

Second, in *Lyshe* the Sixth Circuit addressed the issue of standing in an FDCPA claim holding that the plaintiff lacked standing because he did not show a concrete harm related to the underlying interests Congress meant to protect in enacting a statute. 854 F.3d 855, 860. However Lyshe's alleged FDCPA claim was based on "a violation of state law procedure not

4

required under the FDCPA," and the Sixth Circuit held that this type of harm was not contemplated [for the purpose of standing under the FDCPA] by *Spokeo*. *Id.* at 859. Although not binding, as noted above Wheeler alleges an FDCPA violation based on the Defendants' misleading or deceptive exclusion of important debt collection information on its user website, a practice that goes directly to the intent of the FDCPA, and which caused intangible harm to Wheeler. Thus, the *Lyshe* decision does not support any new basis for this Court to reverse course from its denial of the Motion to Dismiss for lack of standing.

## II. Class Certification

### A. *Rule 23(a)*

A plaintiff who seeks to represent a group of similarly situated persons must first show numerosity, commonality, typicality and adequacy. Fed. R. Civ. P. 23(a)(1)-(4); *Priddy v. Health Care Svc. Corp.*, 870 F.3d 657, 660 (7th Cir. 2017).

#### 1. Numerosity

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This standard is typically satisfied when a class exceeds forty members, although there is no precise number. *Mulvania v. Sheriff of Rock Island County*, 850 F.3d 849, 859-60 (7th Cir. 2017); *see also Swanson v. Amer. Cons. Inds.*, 415 F.2d 1326, 1333 (7th Cir. 1969). Wheeler alleges that approximately 565 individuals meet the proposed definition, with damages totaling approximately $123,468 from web portal users who made a payment through the Defendants' web portal during the class period on an account which was beyond the statute of limitations. (Dkt. No. 63, at 6-7.) The Defendants do not challenge numerosity at this time, (Dkt. No. 71, at 9 n.8), and so Rule 23(a)(1) is satisfied.

2. Commonality

The second class prerequisite calls for "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This does not require identical claims by every member, *see Spano v. The Boeing Co.*, 633 F.3d 574, 585 (7th Cir. 2011), but simply that the plaintiff raise at least one question such "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). In matters similar to this case, commonality is met where the defendants have engaged in standardized conduct towards members of the proposed class. *See Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1996) (finding commonality exists in FDCPA claim where defendants mailed allegedly illegal form letters or documents to all class members).

By this standard, Wheeler establishes commonality because, at a bare minimum, the Defendants engaged in the same conduct with every potential class member—they offered class members a settlement or discount from its debt management web portal and excluded pertinent information regarding the time-barred status of the debt that was misleading or caused confusion. The factual and legal issues common to each member of the class and Wheeler are easily discernible: whether the Defendants withheld relevant information about time-barred debts to consumers who accessed their website, and whether the Defendants' practice violated the FDCPA. The determination of truth or falsity of this issue is certainly central to Wheeler and each class members' claim. As such Rule 23(a)(2) is satisfied.

### 3. Typicality

Next, the class representative's claims must be typical of the rest of the potential class members. Fed. R. Civ. P. 23(a)(3). Typicality is satisfied if the plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and ... [the class representative's] claims are based on the same legal theory." *Rosario*, 963 F.2d at 1018. The inquiry focuses on "whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006). The Defendants argue that Wheeler cannot meet the typicality requirements because of differences with other class members regarding knowledge that the debt was time-barred, the intention (or lack thereof) to make any payments, and a lack of injuries related to accessing the website. (Dkt. No. 71, at 14.)

However Wheeler meets both elements of the typicality requirement. As the class definition states, the event or practice or course of conduct has nothing to do with knowledge or intent of a time-barred debt or intent to make a payment. Rather, the class conduct is the act of accessing the Defendants' website while in possession of a credit card debt on which the last payment had been made more than five years prior to accessing the website, and having been offered a settlement or discount by the Defendants. (Dkt. No. 62, at 1.) The underlying legal theory is also the same—alleged violations of the FDCPA pursuant to § 1692e and § 1692f for misleading or false representations. Furthermore, the lack of injury argument is a regurgitation of the standing issue, which has been addressed twice now. As such, Wheeler satisfies the typicality requirement under Rule 23(a)(3).

4. Adequacy

The final Rule 23(a) requirement requires the plaintiff "fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). A plaintiff must show three elements to prove adequacy: (1) the representative's interest cannot be contrary to those of the rest of the class, *see Amchem Prods. v. Windsor*, 521 U.S. 591, 625-29 (1997); (2) the class representative must be sufficiently interested in the case outcome, *see Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986); and (3) class counsel must be qualified, experienced, and generally able to conduct the case, *see Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90 (7th Cir. 1977).

There is certainly no evidence that Wheeler's interests conflict with those of the class members, and the Defendants do not provide any suggesting as much. *See Rosario*, 963 F.2d at 1018 (a representative should have no antagonistic or conflicting claims with those of the class). Further, the Defendants raise no objection to Wheeler's counsel, and the affidavit of class counsel makes clear that he is qualified, experienced, and generally able to conduct the case. *See* (Dkt. No. 62-3). However, the Defendants argue that Wheeler has no actual damages whereas some class members actually made payments based on their visiting the MCM web portal and so he lacks a similar incentive in representing the class. (Dkt. No. 71, at 14.) As support they cite to non-circuit cases finding a class representative is inadequate.[1] Yet both cited cases vary greatly from the current representative in that the plaintiffs either did not have factual similarities to the prospective class or they lacked standing.

Here, the class members and Wheeler all have similar claims that do not conflict with each other—an alleged FDCPA violation resulting from similar or identical conduct of the Defendants—and Wheeler has standing. To the extent that Wheeler admits he suffered no actual

---

[1] *See Mansfield v. Midland Funding, LLC*, 2011 WL 1212939 (S.D. Cal. 2011) (finding the class representative inadequate because claim was not time-barred like the rest of the class members); *Hines v. Windall*, 334 F.3d 1253 (11th Cir. 2003) (finding inadequacy based on lack of standing).

damages by accessing the MCM web portal where other potential class members sustained actual money damages, this does not preclude him as an adequate representative because Rule 23(c)(2)(B) permits those money damages class members clear notice of opting out of the prospective class. *See Hughes v. Kore of Indiana Enterprise, Inc.*, 731 F.3d 672, 676-77 (7th Cir. 2013); *see, e.g., Pierre v. Midland Credit Management, Inc.*, 2017 WL 1427070, at *8 (N.D. Ill. 2017) (rejecting the theory of standing, typicality and adequacy based on a class representative who did not suffer actual damages as compared to class members who did). Thus, while some members may have a basis for greater damages, at a bare minimum they still have the same interests as Wheeler and so his representation would be adequate. Accordingly, Rule 23(a)(4) is also satisfied.

*B. Rule 23(b)(3)*

Turning next to Rule 23(b)(3) upon which Wheeler relies, a plaintiff must demonstrate that "questions of law and fact common to class members *predominate* over any questions affecting only individual members" and also that a class action is the superior method for "fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added); *Dukes*, 564 U.S. at 362.

1. Predominance

Although similar to Rule 23(a)(2), predominance is more stringent than commonality. *Amchem*, 521 U.S. at 623-24. The plaintiff's burden at the class stage is not to prove the element or elements of a statutory violation; rather it is to demonstrate that elements of a statutory violation are capable of proof at trial through evidence that is common to the class rather than individual to its members. *See Messner v. Northshore University Health System*, 669 F.3d 802, 818 (7th Cir. 2012).

Wheeler argues that the predominant issue common to the class is that each putative class member accessed the Defendants website and was offered a settlement or a discount on time-barred debts without disclosure that the accounts were in fact time-barred. (Dkt. No. 62, at 3.) Although seemingly simple in terms, submission of evidence at trial that this occurred for each putative class member would satisfy a primary element capable of proving the existence of an FDCPA violation because the underlying injury alleged is the class members were misled or confused by the Defendants standard policy or conduct, and the failure to inform the putative members that a debt was time-barred could be misleading. In other words, it is the communication (or lack thereof) that holds the allegations of Wheeler and the putative class members together. *See Dukes*, 564 U.S. at 350. Submission of class-wide evidence that the Defendants offered class members a settlement or a discount, as a custom or policy, in circumstances where the class members debts were time-barred is analogous to similar cases in this District whereby the predominant issue was whether debt collection letters sent by the defendants violated the FDCPA. *See, e.g., Pierre*, 2017 WL 1427070, at *9-10 (finding defendants standard course of conduct towards each class member predominates over other common questions such as damages); *Magee v. Portfolio Recovery Asscs.*, 2015 WL 535859, at *3-4 (N.D. Ill. 2015) (finding the issue of defendants policy of sending allegedly misleading debt collection letters predominate over common question of whether the class members felt deceived); *Quiroz v. Revenue Prod. Mgmt.*, 252 F.R.D. 438, 444 (N.D. Ill. 2008) (similar); *Day v. Check Brokerage Corp.*, 240 F.R.D. 414, 419 (N.D. Ill. 2007) (finding that common question of whether debt collection letters sent violated the FDCPA predominated other issues).

The Defendants argue that Wheeler's predominant issues are too overbroad and simplistic and that individual intensive fact-inquiries underlie the putative class members'

claims. (Dkt. No. 71, at 10.) Particularly, they argue that individual analysis of whether each class members' claim was time-barred based on the definition provided by Wheeler ("on a credit card debt on which the last payment had been made more than five years prior to the accessing [the website]") is incorrect. (*Id.*)

Although relevant to the underlying existence of an FDCPA violation for providing (or not providing) information in a misleading or deceptive manner, the methodology of exactly how and when the statute of limitations begins to run for a particular class member does not destroy predominance. By the Defendants' logic, varying methods of determining whether a credit card debt is time-barred requires individual review of exactly when the five-year statute of limitations began to run, which overrides the common issues put forth by Wheeler, thereby suggesting individual claims as more preferable than a class action.[2] However, when considering the various methods the Defendants use to calculate when any applicable statute of limitations begins to run, it follows that Wheeler's definition is the second most liberal construction and so the putative class members would qualify as being credit card debt owners whose debt is time-barred against the filing of a collection lawsuit regardless of how the Defendants established the statute of limitations. For this reason, the Defendants argument suggesting the need for individual lawsuits fails, and Wheeler satisfies the predominance prong of Rule 23(b)(3).

2. Superiority

The Defendants argue that a class action is not superior "for many of the reasons already enumerated." (Dkt. No. 71, at 15.) However these reasons have been largely rebutted, and as a matter of judicial economy, Wheeler meets the superiority prong of Rule 23(b)(3). "It would

---

[2] The Defendant explains that they utilize up to five different methods to determine when the time-barred statute of limitations begins to run, which are summarily described as the following: (1) provision of the date of delinquency by the original debtor; (2) provision of a calculation based on charge-off dates by the original creditor; (3) use of the charge-off date minus 210 days; (4) the date on which the last payment was made; or (5) the date the account was opened with the original creditor. (Dkt. No. 76, at 5-6).

11

drive a stake through the heart of the class action device, in cases in which damages were sought … to require that every member of the class have identical damages." *Butler*, 727 F.3d at 801. Similarly, to require each of the 565 putative class members to conduct individual lawsuits would run against the judicial economies of time, effort, expense, and would not promote uniformity of a final decision. *See Suchanek v. Sturm Foods*, 764, F.3d 750, 759 (7th Cir. 2014). Thus, Wheeler satisfies the superiority prong of Rule 23(b)(3).

### C. Objectively Identifiable Class

Finally, the Court must determine whether the proposed class is sufficiently identifiable. *Oshana*, 472 F.3d at 513. In other words, the class must be based on objective criteria that identify a particular group harmed during a particular time frame, in a particular location, and in a particular way. *Mullins v. Direct Digital*, 795 F.3d 654, 660 (7th Cir. 2015). Taking into consideration one minor time-based objection by the Defendants, Wheeler's class definition is ascertainable. The Defendants allege that they began including the statute of limitations disclosure on the web site on December 7, 2015. *See* (Dkt. No. 71, at 13; Ex. 14.) Thus, any party included as a class member after that time would not fall within the same common class because they received disclosure of their time-barred debt and could not allege any form of misleading or deceptive communication. In all other regards, Wheeler's class definition is based on objective criteria: the identified group are those that accessed the MCM website whose last payment on debt was over five years old; the time-frame is includes persons who accessed the website on or after a date one year prior to December 11, 2014 and up to December 6, 2015; the particular location is any person who is an Illinois resident who accessed the MCM website; and the particular way is similarly access to the website.

Accordingly, Wheeler satisfies all of the standards enunciated under Rule 23 and the class definition will be defined, with minor adjustments by the Court, as:

> (a) all individuals with Illinois addresses (b) who accessed the MCM web site (c) and were offered a settlement or discount (d) on a credit card debt on which the last payment had been made more than five-years prior to the accessing (e) where the date of access was on or after a date one year prior to the filing of this action and on or before December 6, 2015.

## **CONCLUSION**

For the reasons mentioned Wheeler's Renewed Motion for Class Certification is granted.

[60.]

_____
Hon. Virginia M. Kendall
United States District Judge

Date: April 24, 2018