# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| KEVIN WHEELER, *on behalf of Plaintiff and the class members described herein*, | ) ) ) ) ) | |
|  | ) | No. 15 C 11152 |
| *Plaintiff*, | ) | |
|  | ) | Judge Virginia M. Kendall |
| v. | ) | |
|  | ) | |
| MIDLAND FUNDING LLC, MIDLAND CREDIT MANAGEMENT, INC., ENCORE CAPITAL GROUP, INC., | ) ) ) ) | |
|  | ) | |
| *Defendants*. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kevin Wheeler, on behalf of a class, has sued Midland Funding LLC, Midland Credit Management, Inc., and Encore Capital Group, Inc. (collectively, "Defendants"), for a purported violation of the Fair Debt Collection Practices Act ("FDCPA"). He claims that, in violation of the FDCPA, Defendants enticed him and others to make online payments for time-barred debts without notifying debtors that the debts were not legally enforceable.

The parties have filed cross-motions for summary judgment. (Dkt. 145, 163). Defendants have also moved to bar the expert opinion of Timothy Goldsmith. (Dkt. 160). For the following reasons, Wheeler's motion for summary judgment is granted

in part and denied in part, and Defendants' cross-motion is denied. Defendants' motion to bar Goldsmith is dismissed as moot.

## BACKGROUND

Plaintiff Kevin Wheeler sued three related entities: Midland Funding LLC ("Midland Funding"), Midland Credit Management, Inc. ("MCM"), and Encore Capital Group, Inc. ("Encore"). MCM and Midland Funding are subsidiaries of Encore. (Dkt 170 ¶ 13). Midland Funding purchases debts, which MCM services. (Dkt. 148-1 at 261–62; Dkt. 170 ¶ 17).

At issue here is a debt that Wheeler incurred on a Bank of America credit card. (Dkt. 192 at ¶¶ 7–9). The last payment on the debt was made on September 18, 2009, and the debt was charged off on April 30, 2010. (Dkt. 170 ¶¶ 35–36). In 2012, Asset Acceptance purchased the debt, and in 2013, Asset Acceptance was acquired by Encore. (*Id.* at ¶ 37; Dkt. 192 ¶ 3, 9). In November 2014, Asset Acceptance sent Wheeler a letter that stated, among other things: "The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it." (Dkt. 192 ¶ 11). In January and March 2015, Asset Acceptance sent Wheeler two more letters, again including the same language. (*Id.* at ¶ 12). In April 2015, Wheeler posted on www.creditinfocenter.com that he had received a letter from Asset Acceptance with this language and declared "Happy Statute of limitations birthday to me."[1] (*Id.* at ¶¶ 14–15). In May 2015, Wheeler wrote to Asset Acceptance and told

---

[1] The statute of limitations is relevant here because a debt collector violates the FDCPA if it sues or threatens to sue to collect a time-barred debt. *See Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 683 (7th Cir. 2017).

them that he refused to pay the debt. (*Id.* at ¶ 17). He received a letter in response stating that Asset Acceptance had closed the account. (*Id.* at ¶ 17).

In August 2015, Midland Funding purchased Wheeler's debt, and MCM became the servicer. (Dkt. 170 ¶¶ 37–38; Dkt. 192 ¶ 18). MCM then pulled Wheeler's credit three times, on August 6, 2015, September 25, 2015, and November 11, 2015. (Dkt. 170 ¶ 38). After seeing that his credit had been pulled the first time, Wheeler called MCM on September 14, 2015. (*Id.* at ¶ 39). An MCM representative told Wheeler the account balance and offered Wheeler a 40% discount to resolve his debt. (*Id.* at ¶ 39). That same day, Wheeler again posted on www.creditinfocenter.com, this time stating: "Now Midland is pulling my credit regarding this. I bit and called them. Its SOL and they offered me a 40% settlement over the phone." (Dkt. 192 ¶ 19). Wheeler called back again at some point over the next few days and was given his MCM account number. (Dkt. 148-1 at 20, 112:13-112:19). On another call, on October 15, 2015, an MCM representative again made Wheeler a "settlement offer." (Dkt. 170 ¶ 40). Although MCM's notes on Wheeler's account indicated that the statute of limitations for the debt was November 16, 2014, there is no record that he was informed of this during his calls with MCM. (*Id.* at ¶¶ 46–47).

After Wheeler obtained his account number from MCM, he created an account on MCM's website using the account number. (*Id.* at ¶ 41). On or around October 6, 2015, Wheeler logged onto MCM's website, and he was able to see several pieces of information, "including the creditor, what the past due amount was, and the last payment received." (*Id.* at ¶ 41; Dkt. 192 ¶ 22). The website also had a link that

stated "VIEW OFFERS" and another link that stated "Make a Payment." (Dkt. 148-2 at 84).

On October 13, 2015, MCM sent Wheeler a letter stating that Midland Funding had purchased his debt and that MCM would be servicing the account. (Dkt. 192 ¶ 24; Dkt. 172-2 at 4). The letter also stated what the balance was, and that Wheeler could resolve the debt for a discount. (Dkt. 192 ¶ 24; Dkt. 172-2 at 4). The letter included language similar to what Wheeler had previously received from Asset Acceptance: "The Law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it." (Dkt. 192 ¶ 24; Dkt. 172-1 at 4). Wheeler never made a payment on the account. (Dkt. 192 ¶ 25).

Wheeler brought suit on behalf of himself and a class, alleging that Defendants' actions violated FDCPA provisions 15 U.S.C. §§ 1692e and 1692f. Specifically, he argues that it was a violation of the FDCPA for MCM to offer, via its website, to settle debts without informing debtors that the debts were time-barred.

## **LEGAL STANDARD**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see, e.g.*, *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 485 (7th Cir. 2019). The parties genuinely dispute a material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Daugherty v. Page*, 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In determining whether a genuine issue of

fact exists, the Court must take the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Anderson*, 477 U.S. at 255; *see also Zander v. Orlich*, 907 F.3d 956, 959 (7th Cir. 2018).

## DISCUSSION

Wheeler argues that Defendants sought to deceive and mislead by enticing him and others to pay debts that were not legally enforceable. Defendants argue that Wheeler is a serial plaintiff who was not led astray—he knew all along that his debt was time-barred, he had no intention of paying it, and he is bringing a suit seeking to recover for a harm he knew he would never incur. The Court puts aside both of these impassioned arguments and looks solely to the facts and the law.

### A. Standing

The Court turns first to Defendants' argument that Wheeler's suit must be dismissed for lack of standing. Defendants have previously made this argument, and this Court has rejected it each time. *Wheeler v. Midland Funding LLC*, No. 15 C 11152, 2018 WL 1920254, at *2–3 (N.D. Ill. Apr. 24, 2018); *Wheeler v. Midland Funding, LLC*, No. 15 C 11152, 2017 WL 3235683, at *2–5 (N.D. Ill. July 31, 2017). Defendants are no more successful on this attempt.

"The elements of standing are well settled: the plaintiff must allege an injury in fact that is traceable to the defendant's conduct and redressable by a favorable judicial decision." *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019). "An 'injury in fact' is 'an invasion of a legally protected interest which is (a)

concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

Recently, the Seventh Circuit has reiterated that a "bare procedural violation of the Fair Debt Collection Practices Act" is insufficient to confer standing. *Id.* at 339. In *Casillas*, a debtor sued after she received a notice from a debt collector that neglected to state that if the debtor wanted to dispute the debt, she must do so in writing. *Id.* at 332. The debtor, however, "did not allege that she tried—or even planned to try—to dispute the debt or verify that Harvester Financial Credit Union was actually her creditor." *Id.* at 332. The Seventh Circuit concluded that because the error did not put the debtor "in harm's way, it was nothing more than a bare procedural violation." *Id.* at 334 (internal quotation marks omitted). The Seventh Circuit distinguished this procedural violation from an informational injury—the latter is sufficient to confer standing. It noted that for an informational injury to occur, the defendant must have failed to comply with its "obligation to provide substantive information" whereas for a procedural violation the defendant only fails to comply with its "its obligation to give notice of statutory rights." *Id.* at 335.

Defendants argue that this case is just like *Casillas* because Wheeler knew his account was beyond the statute of limitations, and he had no intention of paying his debt. Therefore, even if MCM had provided additional information, "it would not have changed anything for Wheeler." (Dkt. 164 at 8). Defendants argue that because nothing they did put Wheeler in harm's way, he suffered "nothing more than, as in *Casillas*, a 'bare procedural violation.'" (*Id.*).

Defendants have previously raised this "bare procedural violation" argument and this Court has previously rejected it. *Casillas* changes nothing here. The standing issue in previous procedural violation cases has been that the alleged harm did not align with the purpose of the statute. *See Casillas*, 926 F.3d at 334 (noting that "the provisions of the Fair Debt Collection Practices Act that Madison violated do not protect a consumer's interest in having an opportunity to review and respond to substantive information"); *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 888 (7th Cir. 2017) (noting that "the statute here does not seek to protect Groshek from the kind of harm he claims he has suffered, *i.e.*, receipt of a non-compliant disclosure").

Here, however, "the violation that Wheeler asserts. . . is precisely related to the underlying purpose of the FDCPA. . . and he further identifies actual harm in that he was misled and confused by the Defendants' website." *Wheeler*, No. 15 C 11152, 2018 WL 1920254, at *2. "The purposes of the FDCPA are 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 683 (7th Cir. 2017) (quoting 15 U.S.C. § 1692(e)). 15 U.S.C. § 1692e, the provision under which Wheeler sues, specifically addresses the premise that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Similarly, 15 U.S.C. § 1692f addresses the premise

that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

The violation at issue here, therefore, is not merely a procedural one. Instead, the allegation is that Defendants failed to inform Wheeler and the class that their debts were time-barred and of the risk of paying those debts, an act that the Seventh Circuit has stated is "misleading and deceptive as a matter of law." *Pantoja*, 852 F.3d at 685. In other words, Wheeler alleges that Defendants failed to comply with their "obligation to provide substantive information," distinguishing this case from *Casillas* and in fact alleging the kind of injury that *Casillas* described as sufficient to confer standing. *Casillas*, 926 F.3d at 335. Other courts in this district have held similarly. *Pierre v. Midland Credit Mgmt., Inc.*, No. 16 C 2895, 2019 WL 4059154, at *4 (N.D. Ill. Aug. 28, 2019) ("The FDCPA violation at issue here was not a mere failure to inform the recipients of the letter of required statutory disclosures. Rather, it was substantive, as it deceptively sought to entice action by the recipients."); *Navarroli v. Midland Funding LLC*, No. 18 C 2047, 2019 WL 1044801, at *3 (N.D. Ill. Mar. 5, 2019) ("This Court adds its voice to the growing chorus within this district that has found standing in exactly this type of case.").

As they have previously done, Defendants confuse a lack of actual damages with a lack of injury. Wheeler received a misleading communication, despite the fact that Defendants have a statutory duty not to mislead or deceive debtors. Even if Wheeler never had any intention of challenging his debt, that he was the subject of a "false, deceptive, or misleading representation or means in connection with the

collection of any debt" is enough to confer standing. 15 U.S.C. § 1692e. Even if he were a "tester" seeking to be lied to, that he was subject to an unlawful misrepresentation would be injury enough. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–74 (1982) ("A tester who has been the object of a misrepresentation made unlawful under § 804(d) has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions. That the tester may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, does not negate the simple fact of injury within the meaning of § 804(d)."); *see also Wheeler*, No. 15 C 11152, 2017 WL 3235683, at *3 ("Similar to the FHA, the FDCPA, confers a right to truthful information and is aimed at preventing unlawful misrepresentations. And similar to the testers in *Havens Realty*, Wheeler personally suffered a cognizable injury—the deprivation of truthful information—even without suffering a pecuniary loss.").

Further still, there is evidence here that Wheeler was not just seeking to "test" Defendants. Although he may have had a prior understanding that the account was past the statute of limitations and he never intended to pay MCM (Dkt. 184 ¶¶ 18–20, 22, 48), that does not mean that he was not confused by the communication from MCM. In fact, he testified as much, noting that even though he thought the account was beyond the statute of limitations, he thought Defendants might still try to sue him, he "had a lot of questions about it," and he "was pretty confused about the whole thing." (Dkt. 148-1 at 34, 128:6-129:17). He didn't know if MCM calculated the

statute of limitations in a different way than his previous debtholders. (*Id.* at 46, 174:5-177:20). And even if he knew that the account was past the statute of limitations, he did not know the consequences of making a payment. (*Id.* at 34, 127:14-128:4). *See, e.g., Pierre*, No. 16 C 2895, 2019 WL 4059154, at *4–5 (discussing that the plaintiff's deposition testimony reflected that she had been confused by the defendant's actions).

That Wheeler did not act on MCM's communications or that he did not intend to is irrelevant to standing in this context—it is enough that the Defendants were obligated not to mislead Wheeler and that their actions presented a risk of so doing. Wheeler has shown "that the violation harmed or presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect by enacting the statute." *Lavallee v. Med-1 Sols., LLC*, 932 F.3d 1049, 1053 (7th Cir. 2019) (internal quotation marks omitted). He has therefore asserted an injury sufficient for Article III standing.

### B. FDCPA Violation

Having resolved the issue of standing, the Court turns to whether, as a matter of law, MCM's communications were materially misleading, a subject addressed in both the motion and cross-motion for summary judgment.

When assessing FDCPA claims, courts "use the legal concept of the unsophisticated consumer to gauge the actions of debt collectors." *Pantoja*, 852 F.3d at 686. "The unsophisticated consumer is uninformed, naïve, and trusting, but possesses rudimentary knowledge about the financial world, is wise enough to read

collection notices with added care, possesses reasonable intelligence, and is capable of making basic logical deductions and inferences." *Id.* (internal quotation marks omitted). In applying this standard, courts ask whether the debt collector's language "could well confuse a substantial number of recipients." *Id.* (internal quotation marks omitted).

The Seventh Circuit has held that "a debt collector violates the FDCPA when it misleads an unsophisticated consumer to believe a time-barred debt is legally enforceable, regardless of whether litigation is threatened." *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1020 (7th Cir. 2014). "Matters may be even worse if the debt collector adds a threat of litigation, . . . but such a threat is not a necessary element of a claim." *Id.* In *McMahon*, debt collectors had offered to "settle" debts without giving any "hint that the debts that they were trying to collect were vulnerable to an ironclad limitations defense." *Id.* at 1021.

The Seventh Circuit later addressed a similar issue in *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679 (7th Cir. 2017). In *Pantoja*, a debt collector sent a dunning letter to a debtor, offering to settle a debt for a discount. *Id.* at 682–83. In the letter, the debt collector wrote: "Because of the age of your debt, we will not sue you for it and we will not report it to any credit reporting agency." *Id.* at 682. Even though the letter in *Pantoja* gave more of a "hint" that the debt was time-barred than in *McMahon*, the Seventh Circuit still concluded that the letter was deceptive. It did so for two independent reasons: (1) "the letter does not even hint, let alone make clear to the recipient, that if he makes a partial payment or even just a promise to make a

partial payment, he risks loss of the otherwise ironclad protection of the statute of limitations"; and (2) "the letter did not make clear to the recipient that the law prohibits the collector from suing to collect this old debt." *Id.* at 684.

As to the first ground, the Seventh Circuit noted that, in Illinois, there is a ten-year statute of limitations "for written contracts and debts," or five years "which seems to apply if the plaintiff-debt collector does not have written proof of the debt." *Id.* at 684 (citing 735 ILCS 5/13-205, 735 ILCS 5/13-206). Illinois law appears to hold that a payment or new promise to pay will restart the statute of limitations, although "case law allows some room for disagreement about the precise scope of Illinois law." *Id.* at 685. Regardless of the precise workings of the law, the debtor is worse off if he pays—at worst he restarts the clock and at best he will have to defend a collection suit. *Id.* at 685. Therefore, the Seventh Circuit held, "[s]ilence about that significant risk of losing the protection of the statute of limitations renders" such a letter "misleading and deceptive as a matter of law." *Id.* at 685. As to the second ground, the Seventh Circuit concluded that the debt collector had chosen to use "carefully ambiguous language," and that the only reason to do so would be to mislead unsophisticated debtors. *Id.* at 687. As such, the use of the language violated the FDCPA's mandate not to mislead. *Id.* at 687.

It is hard to distinguish this case from the holdings in *McMahon* and *Pantoja*. MCM's website clearly makes "offers" to debtors, including an offer to pay in full, make a minimum payment, or to "SAVE 40.0%" by paying up front. (Dkt. 148-2 at 84–87). Yet it fails to include any indication that the debts it makes such offers for

are time-barred or that a payment on the debts could revive the statute of limitations.[2] Seventh Circuit precedent would suggest that, as a matter of law, MCM's communications via its website were misleading. Defendants, however, attempt to distinguish the case at hand. These distinguishing arguments, Defendants say, not only require that Wheeler's motion for summary judgment be denied, but that summary judgment be granted in Defendants' favor. This Court addresses each of Defendants' arguments in turn.

The Court starts by rejecting Defendants' arguments regarding materiality. Defendants argue that they are only liable for "material" misrepresentations, which is true. *See Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757 (7th Cir. 2009) (noting that an example of an immaterial statement under the FDCPA might be if a debt collector said that a debtor received a tan-colored letter but in fact he received a gray one). Defendants, however, return to the same arguments they made about standing, that the misrepresentation at issue here could not have been material because Wheeler was never going to pay the debt under any circumstances. This argument is misguided. That Wheeler already knew that the debt was time-barred and was not influenced by the misrepresentation (which is disputed) is irrelevant to

---

[2] Defendants argue that Wheeler claimed only generally that Defendants misled him and others by not revealing that the debts were time-barred. Wheeler did not, they say, specifically claim that the lack of disclosure was misleading *because* it did not inform him that any payment could revive the statute of limitations, and therefore he is now barred from making that argument. But Defendants ask too much, we do not require plaintiffs to spell out every possible theory for their claims. *See, e.g., McCullah v. Gadert*, 344 F.3d 655, 659 (7th Cir. 2003)(stating that "it is well established that plaintiffs are under no obligation to plead legal theories"). Wheeler argued that the omission was misleading—the argument that it was misleading because it failed to explain the risk of revival is encompassed within that. *See Pantoja*, 852 F.3d at 685 (". . . the FDCPA prohibits a debt collector from luring debtors away from the shelter of the statute of limitations without providing an unambiguous warning that an unsophisticated consumer would understand.").

whether the misrepresentation was material. There is no question that it was material—the Seventh Circuit has plainly stated that "[w]hether a debt is legally enforceable is a central fact about the character and legal status of that debt. A misrepresentation about that fact thus violates the FDCPA." *See McMahon*, 744 F.3d at 1020; *see also McMahon v. LVNV Funding, LLC*, 301 F. Supp. 3d 866, 879 (N.D. Ill. 2018) (noting that to find a communication materially misleading it need only have "the ability, *i.e.*, the potential, to influence a consumer's payment decision," the plaintiff need not show that the misrepresentation actually caused him harm).

Next, Defendants argue that this case is unlike *McMahon* or *Pantoja* because MCM did not reference "settling" debts or reference litigation. This Court finds that argument unavailing. That the website does not reference litigation is irrelevant, as "such a threat is not a necessary element of a claim." *McMahon*, 744 F.3d at 1020. Moreover, the website states that it is making "an attempt to collect debt" and provides "offers" for payment, including an offer for a lump-sum, discounted payment rather than paying in full. That Defendants may have dropped the word "settlement" does not change the character of the representation, if anything, it suggests only that Defendants have read *McMahon* and *Pantoja* and attempted to find a loophole. The relevant question is whether the unsophisticated debtor would "believe that the debt is legally enforceable at all," and if yes, "they have been misled, and the debt collector has violated the FDCPA." *McMahon*, 744 F.3d at 1022. Given this Circuit's precedent, the Court sees no reason why omission of the word "settlement" would change the unsophisticated debtor's understanding of whether the debt was legally

enforceable. *See id.* at 1021 (noting that the FTC and CFPB have found "that most consumers do not understand their legal rights with respect to time-barred debts"); *see also Pantoja*, 852 F.3d at 684 (observing that "the opportunities for mischief and deception, particularly when sophisticated parties aim carefully crafted messages at unsophisticated consumers, may well be so great that the better approach is simply to find that any such efforts violate the FDCPA's prohibitions on deceptive or misleading means to collect debts, § 1692e, and on "unfair or unconscionable means" to attempt to collect debts, § 1692f").

Defendants also argue that it is significant that Wheeler was the one who initiated contact with MCM. This Court disagrees. For one, the FDCPA applies generally to efforts to collect consumer debts. *See* 15 U.S.C. § 1692e ("A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."). The website itself notes that it is "a communication from a debt collector" and "an attempt to collect debt." (*See* Dkt. 148-2 at 84–87). For another, it is disingenuous for Defendants to argue that Wheeler independently initiated contact; the undisputed facts show that MCM anticipated that debtors might reach out in response to a credit inquiry and encouraged them to do so. (*See* Dkt. 148-2 at 82).

Finally, Defendants argue that many class members were notified by letter that: "The Law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it. If you do not pay the debt, we may report it to the credit reporting agencies." (Dkt. 184 ¶¶ 30–34). Defendants refer to this as their

"SOL Disclosure" and their arguments suggest that it is magic language that notifies all debtors that their debts are not legally enforceable. The problem, however, is that even if every class member had received a letter from MCM with this disclosure in advance of accessing the website, that would not be enough. The Seventh Circuit held in *Pantoja*, in no uncertain terms, that a disclosure that does not make the debtor aware "that if he makes a partial payment or even just a promise to make a partial payment, he risks loss of the otherwise ironclad protection of the statute of limitations" is "misleading and deceptive as a matter of law." 852 F.3d at 684–85.

Similarly, Defendants argue that, even if they violated the FDCPA by allowing debtors to access the website without being provided an SOL Disclosure, "the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k. They argue that MCM has processes in place to ensure that a debtor receives a validation letter prior to being able to access the website, and that letter contains the SOL Disclosure. For whatever reason, that process failed for Wheeler, and Wheeler was able to access the website and view his offers online before receiving a letter with the disclosure. The Court is skeptical of this argument—as noted above, MCM encourages debtors to call if they see an MCM inquiry on their credit report, and when Wheeler did just that he was advised of the offer to settle his account without any mention of the debt being time-barred. (Dkt. 148-2 at 82; Dkt. 170 ¶ 47). Regardless, Defendants' bona fide error defense is unsuccessful for the reasons already stated. Even if Wheeler and others had received the disclosure in advance of

being able to access the website, or even if the SOL Disclosure was displayed on the website, per *Pantoja*, that disclosure was insufficient, as a matter of law, to apprise debtors of the time-barred nature of their debt and the resulting risk of paying. Therefore, it cannot be said that Defendants had in place a procedure that was "reasonably designed" to inform debtors of the risk of reviving the statute of limitations if they paid or promised to pay a time-barred debt. *Cf. Abdollahzadeh v. Mandarich Law Grp.*, LLP, 922 F.3d 810, 815 (7th Cir. 2019) (noting that the bona fide error defense "does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of that statute" (internal quotation marks omitted)).

For the foregoing reasons, the Court is bound by the holdings in *McMahon* and *Pantoja* to grant summary judgment for Wheeler and the class on the issue of liability. In violation of *McMahon*, the website failed to indicate that the debts at issue were not legally enforceable and were subject to "an ironclad limitations defense." *McMahon*, 744 F.3d at 1021. And in violation of *Pantoja*, any disclosure that may or should have been provided to debtors in advance of them accessing the website was misleading and deceptive as a matter of law because it was silent about the "significant risk of losing the protection of the statute of limitations." *Pantoja*, 852 F.3d at 685. Defendants, as a matter of law, violated the FDCPA, 15 U.S.C. §§ 1692e and 1692f.

Additionally, the Court does not believe that Wheeler must present extrinsic evidence to support his claim, as is required in some FDCPA cases. "The Seventh

Circuit has established three categories of FDCPA cases: (1) 'cases involving statements that plainly, on their face, are not misleading or deceptive'; (2) cases 'involv[ing] statements that are not plainly misleading or deceptive but might possibly mislead or deceive the unsophisticated consumer'; and (3) cases 'involving plainly deceptive communications.'" *Slick v. Portfolio Recovery Assocs., LLC*, 111 F. Supp. 3d 900, 906 (N.D. Ill. 2015) (quoting *Ruth v. Triumph Partnerships*, 577 F.3d 790, 800–01 (7th Cir. 2009)). "FDCPA claims in the second category must be supported by 'extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive,'" whereas claims in the third category "need not produce extrinsic evidence 'to prove what is already clear.'" *Id.* (quoting *Ruth*, 577 F.3d at 800–01). *Pantoja* states that a communication that is silent about the "significant risk of losing the protection of the statute of limitations" is "misleading and deceptive as a matter of law." 852 F.3d at 685. Such a communication thus falls into the third category, and extrinsic evidence is not required. Because the SOL Disclosure did not note the risks that came with paying or promising to pay a time-barred debt, and because the website did not include any discussion at all about the statute of limitations, Defendants plainly violated the FDCPA and extrinsic evidence is not required. *See also McMahon*, 301 F. Supp. 3d at 877 (concluding under similar circumstances that extrinsic evidence was not required); *Magee v. Portfolio Recovery Assocs., LLC*, No. 12 CV 1624, 2016 WL 2644763, at *4 (N.D. Ill. May 9, 2016) (same); *Rawson v. Source Receivables Mgmt., LLC*, 215 F. Supp. 3d 684, 688–89 (N.D. Ill. 2016) (same).

Defendants' motion to bar the expert opinion of Timothy Goldsmith is therefore dismissed as moot because Wheeler is entitled to summary judgment without providing any extrinsic evidence.

### C. Liability of Each Defendant

Wheeler is entitled to summary judgment, but the question that follows is: against whom?  Wheeler argues that all three Defendants qualify as debt collectors under the FDCPA, and all three are responsible here.  Defendants respond that only MCM may be held liable.  Genuine disputes of material fact prevent this Court from concluding that either Midland Funding or Encore are liable as a matter of law.

A debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  The Supreme Court has recently clarified that the latter half of this definition encompasses "third party collection agents working for a debt owner—not. . . a debt owner seeking to collect debts for itself."  *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721 (2017).

The Court first addresses Midland Funding.  Wheeler alleges that Midland Funding purchases, and then collects, debts.  (*See* Dkt. 149 at 7, Dkt. 170 ¶¶ 7–10).  He does not allege that Midland Funding collects or services debts owned by others.  Midland Funding cannot then, under *Henson*, be considered a debt collector based on its collection activities—it collects its own debts, not debts owed to another.  If

Midland Funding is a debt collector, it would have to be based upon the first part of the definition—that the principal purpose of its business is debt collection. To make this argument, Wheeler relies on *Barbato v. Greystone All., LLC*, 916 F.3d 260 (3d Cir.), *cert. denied sub nom. Crown Asset Mgmt. LLC v. Barbato*, 140 S. Ct. 245 (2019). In *Barbato*, the Third Circuit held that "an entity that has the 'collection of any debts' as its 'most important' 'aim' is a debt collector" under the FDCPA. *Id.* at 267. The Third Circuit further stated: "As long as a business's *raison d'être* is obtaining payment on the debts that it acquires, it is a debt collector. Who actually obtains the payment or how they do so is of no moment."[3] *Id.* at 267.

Defendants have presented no evidence that Midland Funding has any business purpose other than to purchase and collect debts. For that reason alone, they are not entitled to summary judgment on the issue. Defendants' other arguments also fail. That Midland Funding (and Encore, for that matter) does not have employees is not conclusive—that does not mean that these companies cannot engage in collection activities. For example, it cannot be said that Midland Funding

---

[3] The Third Circuit engaged in comprehensive statutory interpretation and concluded that the "principal purpose" definition did not require that a business actively or directly collect debts to qualify as a debt collector. It stated:

> "Collection" by its very definition may be indirect, and that is the type of collection in which Crown engages: it buys consumer debt and hires debt collectors to collect on it. The existence of a middleman does not change the essential nature—the "principal purpose"—of Crown's business. . . . Indeed, the record reflects that Crown's only business is the purchasing of debts for the purpose of collecting on those debts, and, as Crown candidly acknowledged at oral argument, without the collection of those debts, Crown would cease to exist.

*Barbato*, 916 F.3d at 268 (footnotes omitted).

has no collection interaction with consumers—it sues them, and that is interaction. *See, e.g., McMahon*, 301 F. Supp. 3d at 884 (noting that a debt collector "interacts with consumers by filing collection lawsuits against them"). And even if Midland Funding has no *direct* interaction with consumers, it is not clear that is required for the "primary purpose" definition of a debt collector, so long as the collection is done on its behalf. *See Barbato*, 916 F.3d at 267; *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325 (7th Cir. 2016) (holding that a company that is itself a debt collector may be held liable for FDCPA violations committed by another entity on its behalf); *see also, e.g., McMahon*, 301 F. Supp. 3d at 884 ("The Court fails to see why it should matter if the debt buyer hires a third party to actually collect its debt, *i.e.*, to be the one who interacts with the debtor to obtain payment."). Moreover, this Court flatly rejects the premise, on this record, that "Midland Funding does not use the mails and telephones to collect consumer debts." (Dkt. 192 ¶ 4). Midland Funding has admitted that it "has been the plaintiff in more than 3,000 collection actions against Illinois residents" (Dkt. 148-1 at 90) and that "the mails and telephone systems" are used in connection with these lawsuits. (Dkt. 148-1 at 89–90). This certainly supports the inference that Midland Funding uses the mail or telephones to collect debts—the Court is hard-pressed to think of any way a business might engage in litigation in today's world without these tools.

Wheeler is likewise not entitled to summary judgment on Midland Funding's liability, although he is closer to the mark. At this point, he has presented evidence that only supports the inference that Midland Funding's principal purpose is

collecting debts; his evidence does not go so far as to conclusively establish this.  (*See* Dkt. 170 ¶¶ 7–9; Dkt. 192 ¶¶ 1–5).  *See, e.g., McMahon*, 301 F. Supp. 3d at 884 ("The evidence does not conclusively establish that the principal purpose of LVNV's business is debt collection—and unlike a jury, this Court may not sift through the evidence and decide whom to believe at the summary judgment stage." (internal quotation marks omitted)).  Summary judgment is therefore not appropriate.

Next is Encore.  The Court concludes that a genuine dispute of material fact prevents it from determining that Encore may be held liable.  Wheeler points to several facts that he argues show that Encore is a debt collector, including that "it specifically studies the behavior and decision making process of economically distressed consumers," it has described itself as "a leader in consumer debt buying and recovery," and it derives substantial income from debt collection.  (Dkt. 170 ¶¶ 18–32).  While this information supports the inference that Encore's primary purpose may be collection of debts, it does not conclusively establish as much. Wheeler also argues that Encore can be held liable in this case  because MCM is its subsidiary and because Encore "created the collection policies and procedures at issue." (Dkt. 189 at 17).  Unlike with Midland Funding, however, Wheeler points to no specific debt collection action taken in Encore's name or on its behalf.  Again, while the evidence Wheeler points to could support this inference, for example, that Encore uses proprietary tools to maximize its collections, the evidence does not conclusively establish that MCM uses those tools at the behest of Encore or that those tools were used in connection with collection of time-barred debts at all.  (Dkt. 170 ¶¶ 18–32).

Defendants are likewise not entitled to summary judgment because the evidence cited by Wheeler *could* support the inference that Encore is a debt collector and is responsible for the violation here. It will be for the factfinder to weigh the evidence and determine whether Encore may be held liable.

### D. Actual Damages

Finally, there is the issue of actual damages. The FDCPA allows for recovery of actual damages. 15 U.S.C. § 1692k(a)(1). "But a plaintiff must prove causation to establish actual damages." *McMahon v. LVNV Funding, LLC*, 807 F.3d 872, 876 (7th Cir. 2015). Defendants argue that Wheeler has failed to show that he or any class member incurred actual damages because of the failure to provide a proper statute of limitations disclosure on MCM's website. Therefore, they say, they are entitled to summary judgment on actual damages.

It is undisputed that Wheeler did not suffer any actual damages. (Dkt. 184 ¶¶ 50–52). It is also undisputed that the class members collectively paid over $120,000 to MCM during the relevant period.[4] (Dkt. 192 ¶ 38). As a preliminary matter, it is irrelevant that Wheeler did not suffer actual damages—as long as he and the class suffered the same injury, it is permissible for his damages to differ from those of the class. *See Keele v. Wexler*, 149 F.3d 589, 593 (7th Cir. 1998) ("The damages recoverable for the class members' injuries may differ—some may be eligible for both actual and statutory damages, others actual damages only, and still others just statutory relief—but the fact remains that their injuries are the same.").

---

[4] Wheeler initially came up with a different calculation, but later admitted as undisputed Defendants' calculation. (Dkt. 170 ¶ 59; Dkt. 192 ¶ 38).

Defendants argue that because Wheeler has not presented any evidence as to causation for the class members, Defendants are entitled to summary judgment on actual damages. The class members, they say, could have paid their debts for any number of reasons other than lack of knowledge of the statute of limitations, for example, they "may have paid out of a sense of moral obligation" or to "improve their credit score." (Dkt. 164 at 16). That may be true. But it is also reasonable to infer, on this record, that the class members paid because they were unaware that their debts were time-barred and of the resulting consequences of payment. While for Wheeler, there is evidence that he would not have paid the debt regardless of the disclosure and suffered no actual damages, the same has not been established for the class members. Summary judgment is therefore inappropriate. Wheeler and the class are entitled to proceed to trial, where the factfinder will weigh the evidence and determine whether to award actual damages.

**CONCLUSION**

The Court grants in part and denies in part Wheeler's motion for summary judgment. The Court denies Defendants' cross-motion for summary judgment and dismisses Defendants' motion to bar Goldsmith as moot. The Court concludes that Wheeler has standing and that he has established that MCM violated the FDCPA. Consistent with this Opinion, the case will proceed to trial on damages and on whether Midland Funding and Encore may be held liable.

Virginia M. Kendall
United States District Judge

Date: March 26, 2020